<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ELDRIDGE HAWKINS, Individually and as Attorney for MARIA GLAVAN, SULIMAN SHABAZZ, and EHIRI PIUS,<br><br>        Plaintiff,<br><br>v.<br><br>SUPREME COURT OF NEW JERSEY, HONORABLE CHIEF JUSTICE DEBORAH T. PORITZ, HONORABLE EUGENE CODEY, HONORABLE FRANCINE SCHOTT, HONORABLE D. JARED HONIGFELD, HONORABLE EDMOND M. KIRBY, HONORABLE PETER B. COOPER, OFFICE OF THE ATTORNEY GENERAL FOR THE STATE OF NEW JERSEY,<br><br>        Defendants. | Civ. No. 04-1317 (WGB)<br><br>**OPINION** |

**<u>APPEARANCES</u>:**

Eldridge Hawkins, Esq.
**ELDRIDGE HAWKINS, LLC**
Suite 309
55 Washington Street
East Orange, NJ 07017

        Plaintiff *Pro Se*

Peter C. Harvey, Esq.
**OFFICE OF THE ATTORNEY GENERAL OF NEW JERSEY**
        by:  Matthew Sapienza, Esq.
R.J. Hughes Justice Complex
25 Market Street
P.O. Box 112
Trenton, NJ 08625

        Attorney to Defendants

1

**BASSLER, SENIOR DISTRICT JUDGE:**

Plaintiff Eldridge Hawkins ("Plaintiff") is a licensed attorney proceeding *pro se* in this civil rights lawsuit filed in March 2004.[1]  Defendants are the Chief Justice of the Supreme Court of New Jersey, five current or former judges of the Superior Court of New Jersey (the "State Judges"), the New Jersey Supreme Court, and the New Jersey Attorney General's Office (collectively, "Defendants").

Plaintiff alleges a laundry list of federal constitutional and statutory violations, invoking 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988, as well as the First, Fifth, Seventh, Ninth, Thirteenth, Fourteenth, and Seventeenth Amendments to the U.S. Constitution.  In addition, Plaintiff brings a state law claim pursuant to the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1 et seq.

In Plaintiff's words, the purpose of the lawsuit is to:

> redress the wrongs committed by the Supreme
> Court of New Jersey and its subordinate
> Judges and against plaintiff Hawkins and his
> Civil Rights plaintiffs clients and those
> similarly situated in its refusal to provide
> an effective and advertised procedure by

---

[1]     Plaintiff brings this lawsuit on his own behalf and "as attorney for Maria Glavan, Suliman Shabazz, and Ehiri Pius," three of his current and/or former clients.  Since the Court, in today's Opinion, dismisses the entire Amended Complaint on the basis of the Rooker-Feldman doctrine, Eleventh Amendment sovereign immunity, and judicial immunity, it does not address the issue of standing.

> which plaintiffs and those similarly situated
> may obtain equal treatment in New Jersey's
> judicial system as it pertains to Judges
> rendering equal treatment to plaintiffs and
> defendants regardless of who may be
> representing the parties.

(Am. Compl. ¶ 2.)[2]

Defendants now move to dismiss the action pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction or, in the alternative, pursuant to 12(b)(6) for failure to state a claim upon which relief may be granted.

For the reasons set forth in this Opinion, the Court grants Defendants' motion to dismiss.

## I.    BACKGROUND

Plaintiff is an African American attorney licensed since 1967 to practice law in the state of New Jersey.[3]  (Id. ¶ 3.)  He describes himself as a "sole practitioner that represents mostly minority plaintiffs against large corporations, governmental entities represented mostly by large white law firms and the Attorney General's Office."  (Id.)

The individually named State Judges are: (1) the Honorable Deborah T. Poritz ("Justice Poritz"), Chief Justice of the New

---

[2]    In the quotes from the Amended Complaint, all capitalization and punctuation are in the original unless otherwise indicated.

[3]    Plaintiff states that his "knowledge of the law does make him different than the usual pro se plaintiff." (Plaintiff's Brief in Opposition to Defendants Motion to Dismiss ("Pl.'s Opp. Br."), at 6.)

Jersey Supreme Court; (2) the Honorable Eugene J. Codey ("Judge Codey"), Presiding Judge, Civil Division, New Jersey Superior Court, Essex County; (3) the Honorable Francine A. Schott ("Judge Schott"), New Jersey Superior Court Judge, Essex County; (4) the Honorable Jared D. Honigfeld ("Judge Honigfeld"), New Jersey Superior Court Judge, Essex County; (5) the Honorable Edmond M. Kirby ("Judge Kirby"), retired New Jersey Superior Court Judge, Essex County; and (6) the Honorable Peter B. Cooper ("Judge Cooper"), retired New Jersey Superior Court Judge, Essex County.[4]

In his six-count Amended Complaint, filed with this Court on April 8, 2004, Plaintiff alleges numerous violations of his federal constitutional and statutory rights, all of which boil down to the claim that the State Judges discriminated against Plaintiff and Plaintiff's clients in prior state court proceedings. The Court summarizes Plaintiff's allegations below.

**A.   Count I**

**1.   Proceedings Before Judge Schott**

Plaintiff appeared as an attorney of record in <u>Glavan v. Twp. of Irvington</u>, ESX-L-6270-02[5], a lawsuit before Judge Schott.

---

[4]   Defendants state in their brief that Plaintiff has consented to the dismissal of Judge Cooper from this lawsuit. To date, the Court has not received a stipulation to that effect. The Court therefore assumes that Judge Cooper is still a named defendant.

[5]   All docket numbers and case names referenced in this section of the Opinion are taken from Plaintiff's Amended Complaint.

4

After two adjournments, a trial date was set for February 17, 2004. (Am. Compl., Count I, ¶ 11.) Shortly before trial, Judge Schott heard oral argument on the opposing party's pending motion for summary judgment. After hearing oral argument, Judge Schott ordered the parties to file additional briefing and adjourned the February 17 trial date until disposition of the motion for summary judgment. (Id. ¶ 13.)

Plaintiff asserted then, as he does now, that the adjournment was procedurally improper, as well as biased against his clients. Judge Schott was not persuaded by Plaintiff's argument. Undeterred, Plaintiff simultaneously: (1) moved for Judge Schott's recusal; and (2) filed this federal civil rights lawsuit naming Judge Schott as a defendant. (Id. ¶ 16.) To Plaintiff's dissatisfaction, Judge Schott denied the recusal motion. Plaintiff also complains that, when informed of the pending federal lawsuit filed against her, Judge Schott stated that "a solution would be to disallow plaintiff Hawkins from appearing in Essex County before the Essex County judges." (Id.)

### 2.    Proceedings Before Judge Codey

In Rance v. Essex County Vocational Schools, ESX-L-00063-01, a lawsuit before Judge Codey, Plaintiff consented to defense counsel's request to adjourn the trial date. (Id. ¶ 16.) Counsel did not, however, properly notify the Court of the adjournment and the case was dismissed when the parties failed to appear for a scheduled calendar call. (Id.) Plaintiff complains

that "[t]his is another practice of the Essex County Court system
or the system of New Jersey's Court that adversely treats
plaintiffs (whose case is dismissed) as opposed to the
defendants." (Id.)  In addition, Plaintiff claims that, when
informed of this federal lawsuit, Judge Codey, like Judge Schott,
threatened "to have all Mr. Hawkins' matters heard by another
County." (Id.)

### 3.   Proceedings Before Judge Honigfeld

Plaintiff appeared before Judge Honigfeld in a number of
proceedings and complains that Judge Honigfeld repeatedly denied
Plaintiff's discovery requests, refused to hear Plaintiff's
discovery motions, and was unwilling to adjourn oral argument on
a summary judgment motion despite the fact that Plaintiff was
ill.  (Id. ¶¶ 17-20.)  In addition, Plaintiff states that Judge
Honigfeld "[r]efused to recuse himself though three previous
times Judge Honigfeld dismissed plaintiff's clients' cases (2
times by summary judgment and one time after a favorable verdict)
and was called prejudiced against attorney Hawkins to his face by
attorney Hawkins." (Id. ¶ 22.)

### 4.   <u>Hawkins v. Harris</u>

Around 1991, Plaintiff's wife, Linda Hawkins, sued several
large insurance firms, attorneys, and investigators in New Jersey
state court for defamation.  (Id. ¶ 34.)  After the trial court
entered judgment in favor of the defendants, and the Appellate
Division partially affirmed, Linda Hawkins appealed to the New

Jersey Supreme Court.  (Id.); see Hawkins v. Harris, 141 N.J. 207 (1995).  Plaintiff complains that the New Jersey Supreme Court improperly "invited" the New Jersey Bar Association to submit an *amicus* brief on behalf of the defendants; but did not solicit similar briefing on behalf of his wife.  (Am. Compl. ¶ 34.)

### 5.   General Allegations of Discrimination

Plaintiff lists nine New Jersey state court proceedings, in addition to the ones described in this Opinion, in which the presiding judges allegedly discriminated against Plaintiff and Plaintiff's clients.  (Id. ¶ 30.)

### 6.   The New Jersey Appellate Division and the New Jersey Supreme Court

Plaintiff complains that both the New Jersey Appellate Division and the New Jersey Supreme Court failed to respond to Plaintiff's allegations of discriminatory treatment.  In Plaintiff's words, "[t]he New Jersey Supreme Court's policy is to have no effective policy to prevent continued discriminations and abuse to attorneys and litigants."  (Id. ¶ 35.)

Based on the allegations set forth in Count I, Plaintiff claims violations of the First, Fifth, Seventh, Ninth, and Fourteenth Amendments to the U.S. Constitution and 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988.

### B.   Count II

Count II centers on allegations that Judge Kirby and Judge Cooper conspired "to have plaintiff try two cases at the same

time" for a period of three months.  (Id., Count II, ¶¶ 2-3.)  In

the case before Judge Kirby, Black v. N.J. Transit, ESX-L-13644-

95, Plaintiff appeared as one of the attorneys of record.  In the

case before Judge Cooper, In the Matter of the Llewellyn Park

Deed of Trust, ESX-14696-4, Plaintiff was a named defendant.

Plaintiff argues that:

> Upon information and belief no other
> attorneys in modern history was made to try
> two cases simultaneously over such a long
> period of time.  Same amounted to legally
> imposed involuntary servitude contrary to the
> U.S. Constitution Amendment XIII, as
> Plaintiff Hawkins was involuntarily ordered
> to serve before these two Judges and forced
> to endure unnecessary interrogations and
> sleep deprivations because of the demands of
> both Judges.

(Id. ¶ 6.)  Based on Judge Kirby's and Judge Cooper's conduct,

Plaintiff claims violations of the Fifth and Fourteenth

Amendments to the U.S. Constitution and 42 U.S.C. §§ 1981, 1983,

1985, 1986, and 1988.

**C.   Count III**

In Count III, Plaintiff repeats the allegations set forth in

Count I concerning Judge Honigfeld's refusal to recuse himself

from several cases in which Plaintiff appeared as an attorney of

record.  Plaintiff argues that Judge Honigfeld's conduct violated

his rights under the First, Fifth, Seventh, Ninth, Thirteenth,

and Seventeenth Amendments to the U.S. Constitution.[6]

**D.   Count IV**

In Count IV, Plaintiff alleges that it is a "conflict of interest" and a violation of the doctrine of "separation of powers" for the New Jersey Attorney General's Office to serve as legal counsel to New Jersey state agencies and personnel, particularly the New Jersey Supreme Court and New Jersey state court judges.  (Id., Count IV, ¶¶ 3-4.)  Plaintiff argues that this "conflict of interest" constitutes an equal protection violation under the Fifth and Fourteenth Amendments to the U.S. Constitution, because private attorneys would be sanctioned for comparable misconduct.

**E.   Count V**

In Count V, Plaintiff essentially repeats the same allegations set forth in Counts I, II, and III, stating that, "[t]he procedures in New Jersey Court system are in favor of rich large corporate defendants and against the smaller usually impoverished civil rights plaintiff in deprivation of the Equal protection Law, U.S. Constitution Amendment XIV, V and trial by jury (Amendment VII)."  (Id., Count V, ¶ 4.)

**F.   Count VI**

---

[6]   Without suggesting anything about the relative merits of Plaintiff's other constitutional claims, the Court cannot help but wonder what on earth the Seventeenth Amendment, which provides for the direct election of United States Senators, has to do with this litigation.

In Count VI, Plaintiff sets forth his sole state law claim, pursuant to the NJLAD.  Arguing that the New Jersey state courthouse is his "place[] of employment," Plaintiff claims that:

> defendants individually, jointly and
> conspiratorially aided and abetted each other
> in violating the plaintiffs protection
> guaranteed under NJLAD with an apparent
> intent to retaliate against plaintiff Hawkins
> for his strenuous objections of employment
> discrimination and New Jersey cooperative
> effort in supporting same by their disparate
> treatment of said plaintiff's trial counsel
> and disparate use of the Court Rules to the
> detriment of often unemployed and impecunious
> plaintiffs who are complaining of employment
> discrimination.

(Id., Count VI, ¶ 4.)

## II.   DISCUSSION

Defendants now move to dismiss the Amended Complaint on grounds of: (1) Eleventh Amendment sovereign immunity; (2) the Rooker-Feldman doctrine; (3) Younger abstention; and (4) judicial immunity.  In addition, Defendants argue that even if Plaintiff's claims are not barred by any of these doctrines, all of the claims lack substantive merit.  Finally, Defendants argue that Plaintiff fails to state a claim against the New Jersey Attorney General's Office or, in the alternative, that any such claims are nonjusticiable.

For the reasons set forth below, the Court agrees that dismissal of the entire Amended Complaint is appropriate on the basis of the Rooker-Feldman doctrine, Eleventh Amendment

10

sovereign immunity, and judicial immunity.

**A.   LEGAL STANDARD**

In examining a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true.  <u>Nesbit v. Gears Unltd., Inc.</u>, 347 F.3d 72, 77 (3d Cir. 2003).  Dismissal under Rule 12(b)(6) can be granted only if the plaintiff cannot obtain relief under any set of facts.  <u>Leamer v. Fauver</u>, 288 F.3d 532, 547 (3d Cir. 2002).

A motion to dismiss under Fed. R. Civ. P. 12(b)(1), attacking the adequacy of the complaint's jurisdictional allegations, is treated the same as a Rule 12(b)(6) motion. <u>Gould Elecs. Inc. v. United States</u>, 220 F.3d 169, 176 (3d Cir. 2000).  In a Rule 12(b)(1) motion, however, the plaintiff has the burden of persuading the court that it has jurisdiction.  <u>Id.</u> at 178.  In ascertaining whether it has jurisdiction, a court may consider and weigh evidence outside of the pleadings.  <u>Jiricko v. Bennett, Bricklin & Saltzburg, LLP</u>, 321 F. Supp. 2d 636, 640 (E.D.Pa. 2004).

**B.   ANALYSIS**

Despite being tempted to address the substantive merits of Plaintiff's often fanciful legal theories, the Court finds that such a discussion is inappropriate given the jurisdictional defects inherent in Plaintiff's claims.  <u>Jones v. Newman</u>, 98 Civ.

7460, 1999 WL 493429, at *7 (S.D.N.Y. June 30, 1999) (unpublished decision) (a court "may not resolve a claim on the merits without first finding that is has jurisdiction to hear the claim--even if the merits question is 'easy' and the jurisdictional question is not").

### 1.  **Rooker-Feldman**

Defendants argue that under the Rooker-Feldman doctrine, the Court is barred from ruling on Plaintiff's federal claims.  The Court agrees.

The Rooker-Feldman doctrine prohibits a district court from reviewing a final judgment of a state court.  See Rooker v. Fid. Trust Co., 263 U.S. 413 (1923); Dist. of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).  This is true whether the decision is issued by a state's highest court, or by its lower courts.  Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 364 F.3d 102, 104 (3d Cir. 2004), overruled on other grounds, 125 S. Ct. 1517 (2005).  As the Second Circuit Court of Appeals has explained, Rooker-Feldman "reflects the principle set forth in 28 U.S.C. § 1257 that the Supreme Court is the only federal court that has jurisdiction to review state court judgments, unless otherwise provided by Congress."  Kropelnicki v. Siegel, 290 F.3d 118, 128 (2d Cir. 2002).

Rooker-Feldman applies in two circumstances: (1) if the claim asserted in federal court was "actually litigated" in state

court prior to the filing of the federal action; or (2) if it is "inextricably intertwined" with a state court adjudication. Exxon Mobil, 364 F.3d at 100-111.  Both circumstances apply here.

     a)   *Actually Litigated*

Having scrutinized the allegations set forth in the Amended Complaint and in Plaintiff's Brief in Opposition to the Motion to Dismiss, it is apparent that Plaintiff previously litigated many, if not all, of his current federal claims in prior state court proceedings.  Indeed, Plaintiff admits as much, stating in his Amended Complaint that he has challenged many of the State Judges' prior rulings by filing numerous motions and, when that failed, by proceeding through the state appellate process.  In Plaintiff's own words:

> Plaintiff Eldridge Hawkins has taken many cases where he has accused Judges of discriminating against him or his clients up to the Appellate Division and Supreme Court. (Am. Compl., Count I, ¶ 22.)

>        ***

> The in limine rule in New Jersey and the summary judgment rules in New Jersey Courts (particularly Essex) are abused by the New Jersey Superior Court Judges...Presently plaintiff Hawkins has a case pending before the Appellate Division on this very issue in Ehiri Pius v. Ptasynski, MID-L-03034-00, A-005975-01T3. (Id. ¶¶ 32-33.)

>        ***

> Plaintiff has made many communications and petitions to the New Jersey Supreme Court,

> Administrative Office of the Courts,
> Presiding Judge Codey in Essex, Assignment
> Judge Falcone in Essex, appeals to the
> Appellate Division Courts regarding his
> continued observations of hostile and
> disparate treatment with no relief...
> (<u>Id.</u>, Count II, ¶ 11.)

In view of these statements, the Court finds it simply untenable for Plaintiff to argue that, "no court has determined this Plaintiff's allegations regarding the lack of proper procedures to protect an attorney and litigant from the unlawful exercise of power by [] a New Jersey Superior Court judge..."[7] (Pl.'s Opp. Br., at 20.)

b)   *Inextricably Intertwined*

Even assuming that Plaintiff's claims were not "actually litigated" in state court, they are nevertheless barred by <u>Rooker-Feldman</u> because they are "inextricably intertwined" with the prior state court adjudications.  As the Third Circuit Court of Appeals has explained, "a federal claim is inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it."  <u>Centifani v. Nix</u>, 865 F.2d 1422, 1430 (3d Cir. 1989 (quoting <u>Pennzoil Co. v. Texaco, Inc.</u>, 481 U.S. 1, 25 (1987) (Marshall, J., concurring)).  A review of Plaintiff's

---

[7]   To the extent that any of Plaintiff's civil rights claims are still pending in state court, <u>Younger</u> abstention would present yet another obstacle to this Court's exercise of jurisdiction.  <u>See</u> <u>generally</u> Erwin Chemerinsky, Federal Jurisdiction § 13 (4th ed. 1993).

requests for relief reveals that all of his claims are in fact inextricably intertwined with prior state court adjudications.

Specifically, Plaintiff asks for the following "declarations:"

> [T]he defendants and New Jersey Courts system policy of summary Judgment is used disparately against plaintiff and his civil rights plaintiffs.
> (Am. Compl., Count I.)

> ***

> {T]he defendants and the New Jersey court system violate their own Rules of ethics and civil procedures to the detriment of plaintiff Hawkins and his civil rights plaintiffs as a class or group.
> (Id.)

> ***

> [D]efendants' actions violate plaintiffs' Due process and equal protection rights and right to trial by jury...
> (Id.)

> ***

> [D]efendants actions were done under color of State law to the disparate determent of plaintiff attorney Hawkins, an African American sole practitioner and his civil rights plaintiffs and to the general benefit of the generally large corporate or governmental defendants generally represented by the government attorney or larger white corporate firms.
> (Id.)

> ***

> [D]efendants have violated plaintiff's rights under the U.S. Constitution contrary to Article VI of the U.S. Constitution and

15

Amendment 1 for freedom of Speech and to
Grieve, V Lack of Due Process, VII Right to
trial by jury, XIV Right to Due process and
Equal protection.
(<u>Id.</u>)

* * *

[T]he continued assignment of Judges to
Hawkins' cases whom Hawkins has called
prejudiced or made recusal applications
against can only be retaliatory and contrary
to 42 USCA 1981, 1983, 1985, 1986, 1988.
(<u>Id.</u>)

* * *

Defendants actions herein deprived plaintiff
Hawkins and his rights of the equal
protection of the law, Due process under
Article VI, Amendments V, XIV and right to
free speech and to petition government for
redress of grievances under Amendment I all
of the U.S. Constitutions.
(<u>Id.</u>, Count II.)

* * *

Defendants actions herein were prejudicial to
judicial ethics, plaintiff's right to life,
liberty, pursuit of happiness and freedom of
speech and to petition government all of
which violated plaintiff's rights under 42
U.S.C.A. 1981, 1983, 1985, 1986, 1988.
(<u>Id.</u>)

* * *

[D]efendants violated plaintiffs' rights
herein under the U.S. Constitutions Article
VI, Amendments, I, V, VII, IX, XIII, XVII.
(<u>Id.</u>, Count III.)

* * *

[P]laintiff attorney Hawkins or any other New
Jersey attorney should not ever have to

16

> appear before any New Jersey Superior Court
> Judges that he has called prejudiced to his
> or her face or made an R1:12-1 et seq. motion
> to recuse or with whom there is a legal
> conflict.
> (<u>Id.</u>, Count I.)
>
>                * * *
>
> [I]t is an impropriety for attorney Hawkins
> to have to continue to appear before Judges
> that he has called prejudiced to the Judge's
> face or against whom he has brought a R1:12-1
> recusal motion.
> (<u>Id.</u>)
>
>                * * *
>
> Plaintiff's further appearance before Judge
> Honigfeld is an appearance of impropriety and
> against New Jersey judicial ethics Rules.
> (<u>Id.</u>, Count III.)

As these requests for relief show, Plaintiff's lawsuit is nothing more than a transparent attempt to get this Court to declare that the State Judges' prior rulings are somehow defective.  This Court simply will not and, indeed, cannot take such action.

The district court's analysis in <u>Shepardson v. Nigro</u>, 5 F. Supp. 2d 305 (E.D.Pa. 1998), is illustrative.  In <u>Shepherdson</u>, the plaintiff brought a lawsuit against her former employer in Pennsylvania state court.  The presiding state court judge, the Honorable Russell Nigro ("Judge Nigro"), granted the defendant's motion for summary judgment.  Plaintiff thereafter sued Judge Nigro in federal court, alleging that her due process rights were violated because, at the time of the summary judgment motion, Judge Nigro should have recused himself from the case because of

a conflict of interest.  The district court dismissed the lawsuit for lack of subject matter jurisdiction.

In its analysis, the court rejected plaintiff's argument that the "Rooker-Feldman doctrine is inapplicable because [plaintiff] does not seek a review of the state court decision and has not claimed the decision was wrong, but only that defendant's failure to recuse himself deprived her of the 'right to an unbiased judge.'" Id., 5 F. Supp. 2d at 308.  The district court went on to explain, "[t]o establish injury, however, the plaintiff would have to show that the violation of such an independent right caused an erroneous adverse decision to be made and this is precluded by the Rooker-Feldman doctrine." Id. (citing Nesses v. Shepard, 68 F.3d 1003, 1005 (7th Cir. 1995)).

As in Shephardson, Plaintiff here argues that Rooker-Feldman does not bar this lawsuit because Plaintiff is not asking this Court to reverse a prior state court judgment.  However, as the foregoing discussion illustrates, Plaintiff's argument simply does not work.  Rooker-Feldman not only bars a district court from overturning a state court judgment; but also bars it from hearing a claim that would require the Court to "determine that the state court judgment was erroneously entered or [to] take action that would render that judgment ineffectual." FOCUS v. Allegheny County Court of Common Pleas, 75 F.3d 834, 840 (3d Cir. 1996).  As one district court has explained, "[i]f it were

otherwise, any person dissatisfied with a state...award could seek review in the district court under the guise of a federal civil rights violation." Logan v. Lillie, 965 F.Supp. 695, 698 (E.D.Pa. 1997).

Finally, the Court notes Plaintiff's argument that this lawsuit is not barred by Rooker-Feldman because it is a general constitutional challenge to New Jersey state civil procedural rules. Under Rooker-Feldman, a district court does have jurisdiction over "general challenges" to rules promulgated by a state court in nonjudicial proceedings--e.g., state bar disciplinary rules--if the challenge does "not require review of a final state-court judgment in a particular case." See Centifanti v. Nix, 865 F.2d 1422, 1427 (3d Cir. 1989). Even assuming that this exception to the Rooker-Feldman doctrine applies in the context of challenges to state civil procedural rules--e.g., rules governing summary judgment and in limine motions--Plaintiff's effort to characterize this lawsuit as a "general constitutional challenge" is completely disingenuous. Indeed, all 28-pages of Plaintiff's Amended Complaint are almost exclusively devoted to a recitation of the personal injuries that Plaintiff and his clients allegedly suffered.[8]  See Stern v. Nix,

---

[8]     Only two of Plaintiff's numerous requests for declaratory relief can conceivably be construed as general and forward-looking.  Specifically, Plaintiff asks for a declaration that:

840 F.2d 208, 212 (3d Cir. 1998) (rejecting plaintiff's characterization of his lawsuit as a general constitutional challenge to state bar rules).

Therefore, the Court concludes that, under the Rooker-Feldman doctrine, it does not have jurisdiction to hear any of Plaintiff's federal claims.

### 2. Immunities

The Court also briefly notes that the doctrines of sovereign immunity and judicial immunity pose additional impediments to this lawsuit.

### a) Eleventh Amendment Sovereign Immunity

The Eleventh Amendment of the United States Constitution prohibits federal courts from hearing suits brought against a

---

New Jersey Courts' system has inadequate measures, policies and practices to protect litigants and counsel from being deprived of Due process, the equal protection of the law in violation of U.S. Constitution Amendment V, XIV and 42 U.S.C.A. 1981, 1983, 1985, 1986.
(Am. Compl., Count I.)

{T]he Supreme Court's summary judgment and other rules, policy and procedures by application treatment and wording, deprive impecunious civil rights plaintiffs and especially those who are impecunious of equal protection of the Law, right to jury trial, due process, right to life, liberty and pursuant to happiness contrary to U.S. Constitution Amendments V, VII, XIV.
(Id., Count V.)

20

state.  See Edelman v. Jordan, 415 U.S. 651 (1974).  This
immunity applies whether the suit is brought by a citizen of the
state being sued or by a citizen of a foreign state.[9]  Hans v.
Louisiana, 134 U.S. 1, 15 (1890).  The central purpose of this
broad grant of immunity is to "accord the States the respect owed
them as joint sovereigns."  Fed. Mar. Comm'n v. S.C. State Ports
Auth., 535 U.S. 743, 765 (2002) (internal quotation marks
omitted).

Even where the state is not a named defendant, sovereign
immunity bars suits where "the state is the real, substantial
party in interest."  See Bennett v. City of Atlantic City, 288 F.
Supp. 2d 675, 679 (D.N.J. 2003) (citing Dugan v. Rank, 372 U.S.
609, 620 (1963)).  Thus, "state agencies and state officials
acting in their official capacities are routinely afforded
Eleventh Amendment immunity."  Id. (citing Will v. Mich. Dept. of
State Police, 491 U.S. 58, 70-71 (1989)); Fitchik v. N.J. Transit
Rail Operations, Inc., 873 F.2d 655, 658 (3d Cir. 1998), cert.
denied, 493 U.S. 850 (1989); Johnson v. N.J. Transit Rail
Operations Inc., Civ. A. No. 87-173, 1988 WL 24148 (D.N.J. March

---

[9]     Plaintiff's argument that the Eleventh Amendment does
not bar suits brought against a state by its own citizens is
simply incorrect.  In Hans v. Louisiana, 134 U.S. at 15, the
Supreme Court explicitly stated that a suit against an
unconsenting state, even when brought by a citizen of that state,
is "unknown to the law...[and] not contemplated by the
Constitution when establishing the judicial power of the United
States."

15, 1988).  In this case, sovereign immunity unquestionably
extends to both the New Jersey Supreme Court and the New Jersey
Office of the Attorney General, regardless of the type of relief
requested.  See N.J.S.A Const. art. VI, § 1 (providing for the
establishment of a state supreme court and lower courts), art. V,
§ 4, ¶3 (providing for the appointment of an Attorney General).[10]

### b)  Judicial Immunity

Judicial immunity also bars any claims against the State
Judges for monetary relief arising out of acts taken in their
judicial function.  See Gallas v. Supreme Court of Pennsylvania,
211 F.3d 760, 768-69 (3d Cir. 2000).  This is true despite legal
or factual error, personal malice, or the performance of an act
in excess of jurisdiction.  Id. at 769.  This rule is "founded
upon the premise that a judge, in performing his or her judicial
duties, should be free to act upon his or her convictions without
threat of suit."  Figueroa v. Blackburn, 208 F.3d 435, 440 (3d
Cir. 2000) (citing Bradley v. Fisher, 80 U.S. 335, 347 (1871)).

There are only two circumstances in which judicial immunity
can be overcome.  First, a judge is not immune from liability for
nonjudicial actions, i.e., actions not taken in the judge's

_____

[10]     There are two important exceptions to the doctrine of
sovereign immunity: (1) a state can consent to be sued; and (2)
Congress can abrogate a state's sovereign immunity.  See Bennett,
288 F. Supp. 2d at 680.  There is no indication in this case that
either exception applies with respect to Plaintiff's federal
claims.

judicial capacity.  Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction.  <u>Mireles</u>, 502 U.S. at 11-12.  The Court does not find, nor does Plaintiff allege, any facts to show that either circumstance applies here.  Accordingly, the State Judges are immune to the extent that Plaintiff seeks monetary relief.

Finally, pursuant to a 1996 Congressional amendment to 42 U.S.C. § 1983, known as the Federal Courts Improvement Act ("FCIA"), judges are also immune from suits for injunctive relief brought pursuant to § 1983, unless a declaratory decree was violated or declaratory relief was unavailable.  42 U.S.C. § 1983; <u>Brandon E. ex rel. Listenbee v. Reynolds</u>, 201 F.3d 194, 197-98 (3d Cir. 2000); <u>Reilly v. Weiss</u>, 97-CV-05883, 1998 WL 1110695, at *1 n.2 (D.N.J. June 15, 1998).  Once again, Plaintiff does not allege, nor does the Court find any evidence that, either exception to the FCIA applies here.  Therefore, the State Judges are also immune to the extent that Plaintiff seeks injunctive relief pursuant to § 1983.

**III. STATE LAW CLAIM**

Because of the absence of any supportable federal claims, the Court declines to exercise jurisdiction over Plaintiff's state law claim under the NJLAD.  <u>See</u> <u>Travis v. Miller</u>, 226 F. Supp. 2d 663, 668 (E.D.Pa. 2002) (citing <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 728, 29 (1966)).

**IV.   CONCLUSION**[11]

For the reasons set forth in this Opinion, the Court grants Defendants' motion to dismiss.  All of Plaintiff's federal claims are **dismissed with prejudice**; his claim under the NJLAD is **dismissed without prejudice**.  An appropriate Order follows.


```
                        /s/ William G. Bassler
                       William G. Bassler
              United States Senior District Judge
```


Dated: August 30, 2005

---

[11]    Plaintiff's brief filed in response to the motion to dismiss is entitled a "Brief in Opposition to Defendants' Motion to Dismiss the Complaint and in Support of Plaintiff's Countermotion to Disqualify the Attorney General's Office From Representing Itself and Codefendants Herein and In Support of Plaintiff's Cross Motion for Summary Judgment."  To the extent that Plaintiff asks the Court to enter judgment in his favor and/or to disqualify counsel, the request is not properly before the Court on a notice of motion.  In any event, the Court's dismissal of the Amended Complaint renders this issue moot.